IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CB OPERATIONS, LLC and BAZ PROPERTIES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GARY PINKSTON and KAUAI HALE, INC., <br><br> Defendants. | No. 25-cv-03500 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

This action arises from two loan agreements between Plaintiffs CB Operations, LLC and BAZ Properties, LLC and Defendants Gary Pinkston and Kauai Hale, Inc. Before the Court is Defendants' motion to transfer this case to the Northern District of California, where Defendant Pinkston filed a separate, parallel lawsuit against Plaintiffs. Defendants' motion requests in the alternative that the Court either stay this case, dismiss it under Rule 12(b)(2), or at least dismiss Count IX of Plaintiffs' amended complaint (a claim for an "Accounting"). Plaintiffs do not oppose the dismissal of Count IX, but they contest the remainder of Defendants' motion. For the reasons discussed below, Defendants' motion is granted in part and denied in part.

I.  **BACKGROUND**

Plaintiffs CB Operations, LLC ("CB Operations") and BAZ Properties, LLC ("BAZ Properties") are Illinois limited liability companies headquartered in DeKalb

County, Illinois. (Dkt. 48 ¶¶ 2–5.) CB Operations has two members, Christopher Mayer and Bruce Zierk, both of whom are Illinois residents. (*Id.* ¶¶ 3–7.) BAZ Properties has one member, Bruce Zierk. (*Id.*) Defendant Gary Pinkston is a resident of California, and Defendant Kauai Hale is a Delaware corporation with its principal place of business in Hawaii. (*Id.* ¶¶ 9–10.)

In June 2023, CB Operations entered into a loan agreement with Defendants and executed related promissory notes by which CB Operations would loan Defendants $10,755,720 to develop a condominium project in Hawaii. (Dkt. 16 ¶¶ 17–18.) In exchange, Defendants would provide CB Operations with an option to purchase twelve condominium units before they were offered for sale to the public. (*Id.* ¶ 19.) CB Operations would accept conveyance of title to those units in lieu of repayment on the loan. (*Id.*) Defendants also promised to pay CB Operations 4.43% interest on a per annum basis up and until the delivery date for each unit. (*Id.* ¶ 22.) In the event of a default, Defendants agreed to pay a default rate of 14.0% per annum. (*Id.* ¶ 23.) Under the terms of the agreement, the parties also consented to jurisdiction "of any court located within Chicago, Illinois" and stipulated that the agreement would be "construed and enforced in accordance with the laws of the State of Illinois, without reference to the choice of law or conflicts of law principles of the State of Illinois." (*Id.* ¶ 37; Dkt. 16-1 at 21.)

In August 2023, CB Operations and BAZ Properties entered into a separate loan agreement and series of promissory notes with Defendants (together with the June 2023 agreement, the "Loan Agreements"). CB Operations loaned Defendants

2

another $2,800,000 to develop condominiums in Hawaii. (Dkt. 16 ¶ 39.) In exchange, Defendants agreed to provide BAZ Properties with an option to purchase two condominium units before they were offered for sale to the public and accept the title for the units in lieu of repayment on the loan amount. (*Id.* ¶ 40.) In the written agreement, a forum selection provided that the parties "hereby consent and submit to the jurisdiction of any court located within Chicago, Illinois[.]" (Dkt. 16-3 at 22.) Both agreements therefore contained a forum selection clause consenting to a federal court's jurisdiction within the Northern District of Illinois. As with the June 2023 agreement, the August 2023 agreement stated that it had been "negotiated, executed and delivered at Chicago, Illinois, and shall be construed and enforced in accordance with the laws of the State of Illinois, without reference to the choice of law or conflicts of law principles of the State of Illinois." (*Id.*)

In November 2024, Defendants sent a letter to Plaintiffs, which stated that certain weather conditions constituting a "force majeure" had prevented Defendants from completing the project consistent with the anticipated timeline. (Dkt. 16 ¶¶ 47–48.) In the following months, Defendants submitted revised schedules to Plaintiffs that extended the construction timeline. (*Id.* ¶ 51.)

Plaintiffs allege that no force majeure event restricted Defendants' ability to complete the project. Rather, they allege that Defendants employed limited working crews and that workers and contractors had started to quit after they were not paid by Defendants. (*Id.* ¶¶ 52–54.) When Plaintiffs requested updates from Defendants

3

regarding the status of the condominium project and their ability to finish it, Defendants did not respond. (*Id.* ¶¶ 56–62.)

In March 2025, settlement talks between the parties broke down, and Defendant Pinkston filed a lawsuit against Plaintiffs in the Northern District of California on March 28, 2025. (*See* Dkt. 35 at 2.) Plaintiffs filed this lawsuit in the Northern District of Illinois on April 1, 2025 and, in the parallel case, moved to dismiss the action pending in California. On June 6, 2025, the district court in the Northern District of California granted Plaintiffs' motion, characterizing Pinkston's lawsuit as an "improper anticipatory filing[.]" (*Id.* at 3.) As a result, the district court dismissed the case with prejudice. (*Id.*) The court did not take a position, however, as to the merits of Pinkston's claims or any arguments regarding personal jurisdiction over Defendants in the Northern District of Illinois. (*Id.*)

In Plaintiffs' amended complaint here (Dkt. 16), they bring several counts for breach of contract stemming from the Loan Agreements. Plaintiffs also seek a court-directed accounting to assess Defendants' financial situation, a declaratory judgment stating that Defendants are in default under the agreements, and a declaratory judgment requiring Defendants to provide certain documentation to Plaintiffs. Defendants moved to transfer the case to the Northern District of California or stay the case pending resolution of the California case. In the alternative, Defendants moved to dismiss this case for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure and to dismiss Plaintiffs' claim for an accounting in Count IX of the amended complaint under Rule 12(b)(6). Plaintiffs do not dispute

4

dismissal of Count IX of the amended complaint. (Dkt. 44 at 15 n.5.) That portion of Defendants' motion is therefore granted, and Plaintiffs' claim for an accounting is dismissed. As explained below, however, Defendants' remaining arguments fail.

## II. DISCUSSION

### A. Motion to Transfer or Stay

Defendants argue that the Court should transfer this case to the Northern District of California under 28 U.S.C. § 1404(a). Under that provision, a district court may "transfer any civil action to any other district or division" for the "convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. § 1404(a). When a court analyzes whether to transfer a case under § 1404(a), it typically considers "both the parties' private interests and the public's interest." *SP Plus LLC v. Diniz*, 2025 WL 1836035, at *1 (N.D. Ill. July 3, 2025) (citing *Rsch. Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 976 (7th Cir. 2010)). Parties' private interests include convenience of the parties and witnesses, the situs of the material events, ease of access to evidence, and "other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). In addition, courts typically consider five public-interest factors: (1) docket congestion, (2) the relative "speed to trial" in each forum, (3) each forum's "familiarity with the relevant law[,]" (4) the "respective desirability of resolving controversies" in each forum, and (5) "relationship of each community to the controversy." *In re Ryze Claims Sols.*, 968 F.3d 701, 708 (7th Cir. 2020).

5

When "parties agree to a forum-selection clause," however, " 'they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.' " *Id.* (quoting *Atl. Marine*, 571 U.S. at 64). Accordingly, a court must deem the private-interest factors "to weigh entirely in favor of the preselected forum," and "may consider arguments about public-interest factors only[.]" *Id.* (internal quotations omitted). As the parties resisting the application of the forum-selection clause, moreover, Defendants have the burden to justify a transfer contrary to the terms of that clause. *Id.* Indeed, "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 59–60 (internal quotations omitted).[1]

### i. *Applicability of the Loan Agreements' Forum Selection Clauses*

Both Loan Agreements provide that the parties consent to adjudicating disputes stemming from the agreements in the Northern District of Illinois. (Dkt. 16-1; Dkt. 16-3). In asking the Court to bypass the forum selection clauses, Defendants

---

[1] Plaintiff notes (Dkt. 44 at 6–7) that courts presume the enforceability of a forum selection clause unless "[its] incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power," if "the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court," or if the clause "would contravene a strong public policy *of the forum in which the suit is brought*, declared by statute or judicial decision." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) (emphasis added) (internal quotations omitted). Plaintiffs argue that the Court should accordingly ignore California public policy and focus solely on the public policy of Illinois as the forum state. (Dkt. 44 at 7.) The Seventh Circuit, however, has applied this rule when considering dismissal of an international dispute for *forum non conveniens* rather than adjudicating a motion to transfer venue under § 1404(a). *See, e.g., AAR Int'l*, 250 F.3d at 525; *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993). To avoid overextending the proper application of these cases, the Court finds that denial of Defendants' motion to transfer is warranted even without wholly excluding consideration of California public policy.

6

argue that the Northern District of California is a more convenient forum than the Northern District of Illinois. Defendants highlight that Defendant Pinkston is a California resident, and his "primary business offices" are in California. (Dkt. 38 at 9.) Defendants also state that "significant witnesses" are in Hawaii, which is closer to California than Illinois. (*Id.* at 9–10.) Defendants note specifically that the company the parties hired to build the condominium units discussed in the Loan Agreements is headquartered in California. (*Id.*)

But in agreeing to the forum-selection clauses within the Loan Agreements, Defendants "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64. Defendants' arguments about the location of the evidence and witnesses, the situs of the events, and the burdens of litigating in the Northern District of Illinois are therefore unconvincing. *See SP Plus LLC*, 2025 WL 1836035 at *1.

A court must consider the public interest as it relates to the "efficient administration of the court system." *Rsch. Automation*, 626 F.3d at 978. Defendants do not assert or otherwise show that the proposed California forum maintains a less-congested docket or that the case would proceed with greater speed to trial in California. (*See* Dkt. 38; Dkt. 45.) Defendants therefore do not show that transferring this case would serve the efficient administration of the court system. In the same vein, although Defendants argue that the Court should apply California law in adjudicating Plaintiffs' claims, Defendants do not suggest that a district court in

7

California would be more familiar with the applicable law than a court in the Northern District of Illinois. Defendants' arguments thus appear to turn on the "respective desirability of resolving controversies" in each forum, and the "relationship of each community to the controversy." *SP Plus*, 2025 WL 1836035, at *1.

Defendants contend that the Loan Agreements' forum selection clauses are unenforceable because they conflict with California law and public policy. First, Defendants argue that the Court should apply California law to the Loan Agreements, and the forum selection clauses are unenforceable under California law. Given, however, that the Loan Agreements both contain choice-of-law provisions dictating application of Illinois law, Defendants do not establish that the Court should evaluate the forum selection clauses under California law.

A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits. *Pettit v. Procter & Gamble Distributing LLC*, 2025 WL 2257397, at *2 (N.D. Ill. Aug. 7, 2025) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Illinois has generally adopted the choice-of-law rule in the Restatement (Second) of Conflict of Laws (1971) (the "Second Restatement"). *LKQ Corp. v. Fengler*, 2012 WL 1405774, at *3 (N.D. Ill. Apr. 23, 2012) (citing Illinois law). The Second Restatement provides that a contract's choice-of-law provision will govern unless: "(1) the chosen state has no substantial relationship to the parties or the transaction; or (2) application of the chosen law would be contrary to a fundamental public policy of a state with a materially greater interest in the issue in

8

dispute." *Id*. Nevertheless, the Second Restatement is "a guide for [Illinois] courts" rather than "black-letter law." *Maher & Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000, 1006 (Ill. App. 2d 1994). Illinois is also "among those States that generally follow the modern approach to choice-of-law questions," which "places the greatest importance on the public policy of the [s]tate in which a case is brought." *Id*.

Defendants argue that California maintains a materially greater interest in the subject matter of Plaintiffs' claims. Not so. Whether a state has a "materially greater interest in the subject matter of the litigation depends on (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Hendricks v. Novae Corporate Underwriting, Ltd*, 868 F.3d 542, 545 (7th Cir. 2017) (citing the Second Restatement, § 188). Weighing these factors, Defendants do not meet their burden to show that California maintains a materially greater interest in the dispute.[2]

Defendants state that the place of contracting factor is "split between Illinois and California" because Defendant Pinkston "signed the [Loan Agreements] in California" whereas Plaintiffs signed the contract in Illinois. (Dkt. 45 at 4 (citing Dkt. 38-5 ¶ 13)). Defendants also state that the place of negotiation is neutral "for the

---

[2] Defendants do not raise arguments regarding these factors in their memorandum in support of their motion to transfer and discuss the factors for the first time in their reply. (Dkt. 45 at 4–5.) Just as undeveloped arguments are waived, "so are arguments raised for the first time in reply briefs." *United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023). Nevertheless, the Court will analyze the factors to fully address the issue.

same reasons." *Id*. Defendants further argue that the fifth factor, the location of the parties, is likewise neutral because Pinkston is domiciled in California, and Plaintiffs are domiciled in Illinois. That two Plaintiffs are from Illinois while Defendant Pinkston is from California (Defendant Kauai Hale, Inc. is headquartered in Hawaii and incorporated in Delaware) appears to cut against California's relative interest in the dispute. But because Defendants concede that these factors do not support their position, their argument turns on location of performance under the Loan Agreements and the subject matter of the contracts.

Defendants argue that the "place of performance" factor supports California's interest in the litigation because the Loan Agreements involve the lending of funds from Illinois corporate entities to Pinkston, a California citizen and resident. (Dkt. 45 at 4.) Defendants highlight that the Loan Agreements also require that Pinkston either pay back the loans or transfer ownership of condominium units to the Illinois-based Plaintiffs. (*Id*.) Defendants do not explain, however, how a transfer of funds from Illinois into California in exchange for a payment transmitted from California to Illinois supports one state's interest over the other. A transfer of money or property from one state into another appears to touch both states equally. Moreover, that performance of the Loan Agreements required a repayment from California (or potentially from another state) back into Illinois reinforces the conclusion that the "place of performance" factor is at least split between Illinois and California.

Defendants' argument that the "subject matter of the contract" can more properly be said to pertain to California for the same reason is equally unconvincing.

10

(Dkt. 45 at 4–5.) Because Defendants do not show that either of these factors weigh clearly in their favor, Defendants do not show that California has a greater material interest in the dispute than Illinois.

In a related argument that appears to pertain to the respective desirability of resolving the parties' controversy in California, Defendants characterize the Loan Agreements' choice-of-law and forum selection clauses as an attempt to "skirt the application of California law" and prohibit California from "protecting its citizens." (Dkt. 45 at 5.) Defendants highlight that the Loan Agreements contain a "pre-dispute waiver of jury trial" as well as terms specifying amounts of default interest on the loans at issue and attorneys' fees, which cut against California public policy. (*Id.* at 5–6.)

Illinois public policy, however, "strongly favors the freedom to contract," counterbalancing the policy concerns raised by Defendants. *See 15th Place Condo. Ass'n v. South Campus Dev. Team, LLC*, 14 N.E.3d 592, 598 (Ill. App. 1st Dist. 2014); *see also Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 215 (1997) ("The laws and the public policy of the state permit and require freedom of contracting between competent parties."). Defendants do not cite any legal authority to suggest that the Court should weigh the policy interest of the proposed forum over that of the current forum. *See, e.g., Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (applying California law rather than Texas law to determine the enforceability of an arbitration agreement where the underlying lawsuit was filed in *California*). This is especially so since Defendants are the ones that voluntarily

11

asked Illinois entities to loan them money and then agreed to the terms essential to that business transaction. It would strain the bounds of reason to hold that asserted, generalized interests of California public policy could override these private parties' choices to do business subject to the law of Illinois.

Given that Illinois law favors the public policy of the forum state in choice-of-law questions, Defendants do not show how California's interest in availing Pinkston to its public policies defeats Illinois's interest in protecting Plaintiffs' freedom to contract. Accordingly, Defendants do not show that California maintains a greater material interest in the dispute. Transfer of this case out of the forum specified in the Loan Agreements is therefore unwarranted.

### ii. The First-to-File Rule

Defendants further argue that, under the so-called "first-to-file" rule, the Court should transfer this case because Defendant Pinkston filed a parallel lawsuit in the Northern District of California before Plaintiffs brought this lawsuit. (Dkt. 38 at 7–8; 10.) Indeed, the first-to-file rule entails transferring a case to the forum where a related case was filed first. Courts within the Seventh Circuit, however, do not "rigidly adhere to a first-to-file rule." *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 980 (7th Cir. 2010). Moreover, courts have "departed from a first-to-file rule where one party files its lawsuit in anticipation of an impending suit by the opposing party." *Id.*

Applying the first-to-file rule in this case at this juncture makes little sense. In an order dismissing Defendant Pinkston's lawsuit with prejudice, the District

12

Court for the Northern District of California described the action as an "improper anticipatory filing," discouraging this Court's application of the first-to-file rule. (Dkt. 43.) In addition, because the action proceeding in the Northern District of California has been dismissed with prejudice, there is no apparent reason to apply the first-to-file rule now. Although parallel cases proceeding concurrently in separate district courts pose a risk of disparate outcomes, that risk is no longer present. Accordingly, the Court will not transfer this case to the Northern District of California because a related lawsuit was filed there first. Defendants state the Court should at least stay the case given the pending litigation in California. (Dkt. 38 at 10.) That request is denied for the same reasons.

### B. Personal Jurisdiction

In addition to their motion to transfer or stay, Defendants move in the alternative to dismiss for lack of personal jurisdiction. Defendants highlight that a forum state's courts "may not exercise personal jurisdiction over a nonconsenting, out-of-state defendant unless the defendant has 'certain minimum contacts with it[.]'" *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014) (quoting *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945)). In evaluating the consent of the parties, however, the Court first considers whether there are any valid forum selection clauses, the existence of which "renders any examination of the defendant's contacts with the forum state unnecessary." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011); *see also Heller Fin. Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1290 (7th Cir. 1989)

13

("Challenges to personal jurisdiction may be waived by either express or implied consent."). Indeed, a defendant waives objections to personal jurisdiction "by signing a forum selection clause." *IFC Credit Corp. v. Aliano Bros. Gen Contractors, Inc.*, 437 F.3d 606, 610 (7th Cir. 2006).

Defendants argue that they do not maintain sufficient contacts with Illinois to justify personal jurisdiction in this forum, as they "do no business" in Illinois and "have no connection with Illinois" other than entering into the Loan Agreements with the Illinois-based Plaintiffs. (Dkt. 38 at 11.) That "other than" qualifier matters a great deal: Defendants have not shown that the forum selection clauses contained in the Loan Agreements are unenforceable. Indeed, none of the cases cited by Defendants involves circumventing an apparently valid forum selection clause. (*See* Dkt. 38 at 11; Dkt. 45 at 6–8.) Because Defendants effectively waived objections to this Court's personal jurisdiction when they signed the Loan Agreements and their forum selection clauses, examination of Defendants' contacts with Illinois is unnecessary. Defendants' arguments regarding its minimal contacts with Illinois are accordingly unconvincing. Defendants' motion to dismiss this case under Rule 12(b)(2) of the Federal Rules of Civil Procedure is therefore denied.

### III. CONCLUSION

Plaintiffs' claim for an accounting is dismissed without prejudice. For the reasons discussed above, Defendants' motion is denied in all other respects.

SO ORDERED in No. 25-cv-03500.

Date: January 7, 2026

                                             JOHN F. KNESS
                                             United States District Judge